**Larry Glenn HAYNES, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1923–06.**

Court of Criminal Appeals of Texas.

April 30, 2008.

Rehearing Denied Aug. 20, 2008.

---

James M. Leitner, Houston, TX, for Appellant.

Shirley Cornelius, Asst. Dist. Atty., Houston, Jeffrey L. Van Horn, State's Atty., Austin, for Appellee.

### *OPINION*

HERVEY, J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON, KEASLER and HOLCOMB, JJ., joined.

■ The issue in this case is whether an appellate court may reform a trial court's judgment to reflect a conviction for an unrequested lesser-included offense not submitted to the jury, when the appellate court decides that the evidence is insufficient to support the jury's guilty verdict for the greater offense but is sufficient to support a conviction for the lesser-included offense. We decide that, under these circumstances, an appellate court may not reform the trial court's judgment to reflect a conviction for the lesser-included offense.

A jury convicted appellant of the charged felony offense of assaulting a member of his household by causing her bodily injury several years after appellant had been convicted of assaulting a family

member on another occasion.[1] The jury charge does not contain any lesser-included offenses, and the record does not reflect that either party requested the inclusion of any lesser-included offenses in the jury charge. At the punishment phase, appellant pled "true" to two felony enhancement paragraphs, and the trial court sentenced appellant to the minimum of 25 years in prison.

The court of appeals decided that the evidence is insufficient to support appellant's conviction for the charged offense, because the evidence does not support an elemental finding that the more recent assault victim was a member of appellant's household at the time of the assault. *See Haynes*, op. at 189. The court of appeals reversed appellant's conviction and entered a judgment of acquittal. *See id.* We granted ground two of the State's petition for discretionary review, which presents the claim that, instead of ordering a judgment of acquittal, the court of appeals should have reformed the trial court's judgment to reflect appellant's conviction for the lesser-included, Class A misdemeanor offense of assault.

This Court addressed this reformation issue as one of first impression in *Collier v. State*, 999 S.W.2d 779, 780 (Tex.Cr.App. 1999). Judge Mansfield's lead four-judge plurality opinion in *Collier* decided that:

> [A] court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser included offense and (2) either the jury was instructed on the lesser included offense (at the request of a party or by the trial court *sua sponte*) or one of the parties asked for but was denied such an instruction.

*Collier*, 999 S.W.2d at 782 (Mansfield, J., joined by Meyers, Price, and Johnson, JJ.) (italics in original).

Judge Mansfield's lead opinion in *Collier* was based in large part on the rationale that in cases like this the State "overreaches" or goes "for broke" by pursuing a trial strategy of not requesting a lesser-included offense instruction to make it more likely it will obtain a conviction for the greater offense that the evidence might only "weakly" support. *See Collier*, 999 S.W.2d at 781–82.[2] According to this opinion, if the jury then convicts the defendant of the greater offense, but an appellate court later decides that the evidence is insufficient to support one of its elements, permitting the appellate court to reform

---

1. The evidence shows that appellant caused his former roommate bodily injury by striking her mouth with his hand. She had moved out about a month before to "get away" from appellant. The evidence also shows that appellant had been convicted of assaulting a family member several years before he committed the assault in this case.

    Current and former Section 22.01(a)(1), Tex. Pen.Code, provide that a person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." The law applicable to appellant's case provides that this offense is a third-degree felony, instead of a Class A misdemeanor offense, if the offense is committed against "a member of the defendant's family or household, if it is shown on the trial of the offense that the defendant has been previously convicted of an offense against a member of the defendant's family or household under this section." *See* Former § 22.01(b)(2), Tex. Pen.Code; *Haynes v. State*, 254 S.W.3d 466, 468 n.1 (Tex.App.–Houston [1st Dist.], 2007) (setting out the history of this statute).

2. Judge Mansfield's lead opinion in *Collier* adopted the reasoning of the Wisconsin Supreme Court's unanimous decision in *State v. Myers*, 158 Wis.2d 356, 461 N.W.2d 777 (1990). *See Collier*, 999 S.W.2d at 782.

the judgment to reflect a conviction for a supported-by-the-evidence lesser-included offense would "rescue [the State] from a trial strategy that went awry." *See id.* (permitting appellate court to reform judgment would permit State to "have all the benefits and none of the risks of its trial strategy, while the accused would have all the risks and none of the protections" of its trial strategy).[3]

Judge Keasler's opinion concurring only in the judgment in *Collier* was the necessary fifth vote to support the judgment in that case. *See Collier,* 999 S.W.2d at 783–85 (Keasler, J., concurring). Judge Keasler's concurring opinion decided that a "court of appeals cannot reform a judgment to reflect a conviction for a lesser-included offense unless that lesser-included offense was submitted in the jury charge." *See Collier,* 999 S.W.2d at 784 (Keasler, J., concurring) and at 785 (same).[4]

We understand the State to claim that *Collier* has no precedential value, because there is no majority holding contained within its lead and concurring opinions. *See, e.g., Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (when "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds") (internal quotes omitted). We further understand the State to argue that the issue presented in *Collier* and in this case should, therefore, be reexamined anew as an issue of first impression unburdened by any *stare decisis* considerations.

■ We note, however, that the "overreaching" rationale in Judge Mansfield's lead opinion in *Collier* replicates much of the rationale of this Court's **majority** opinion in *Stephens v. State,* 806 S.W.2d 812, 817–18 (Tex.Cr.App.1990) (Campbell, J., joined by Davis, Clinton, Teague, Miller, White, Berchelmann, and Sturns, JJ.).[5] In

3. The rationale of Judge Mansfield's lead plurality opinion in *Collier,* therefore, appears to be based on not allowing the State "to have its cake and eat it too." We note that the punishment range for the charged third-degree felony offense in this case with two prior felony convictions is 25 to 99 years in prison. *See* § 12.42(d), Tex. Pen.Code. The punishment range for a Class A misdemeanor assault offense with two prior felony convictions is 90 days to one year in jail. *See* § 12.43(a)(2), Tex. Pen.Code. Appellant was, therefore, exposed to a much greater punishment range than he would have been exposed to had the jury been instructed on and convicted appellant of the Class A misdemeanor assault offense.

4. Judge Keasler's holding was based on Tex. R.App. 43.2(b), which authorizes a court of appeals to "modify" a trial court's judgment and affirm it as modified, and Tex.R.App. 43.3, which authorizes a court of appeals, when reversing a trial court's judgment, to "render the judgment that the trial court should have rendered." *See Collier,* 999 S.W.2d at 784 (Keasler, J., concurring) ("judgment that the trial court should have rendered" under Rule 43.3 can only be a judgment that trial court was capable of rendering, given the jury instructions, and if jury is only instructed on one offense, then trial court can render only judgment on that offense or a judgment of acquittal) and at 785 (rendering judgment on lesser-included offense is not simply "modifying" judgment under Rule 43.2(b) but is entry of another judgment entirely); *see also Myers,* 461 N.W.2d at 779–80 (Wisconsin rule of appellate procedure authorizing appellate court to modify a judgment does not permit appellate court to "repair a guilty verdict reversed for insufficient evidence by simply modifying the conviction to reflect a lesser included offense when instructions on the lesser included offense were not submitted to the jury").

5. The majority opinion in *Stephens* held that "when a defendant has obtained a reversal of a conviction for a greater offense solely on the ground that there was insufficient evi-

addition, we do not agree with the State that *Collier* contains no majority holding. Judge Keasler's concurring opinion in *Collier* sets out a majority holding, because this opinion does contain the narrowest ground upon which five of the judges concurring in the judgment in *Collier* agreed. The narrowest ground upon which these five judges agreed is that an appellate court may in cases like this reform a judgment to reflect a conviction for the lesser-included offense when that lesser-included offense was submitted in the jury charge. *See Collier*, 999 S.W.2d at 782 (lead plurality op.) (appellate court may reform judgment if "the jury was instructed on the lesser included offense") and at 784 (Keasler, J., concurring) (appellate court may not reform judgment unless the "lesser-included offense was submitted in the jury charge").[6]

■ And, Judge Keasler's concurring opinion in *Collier* is based on Rules 43.3 and 43.2(b), which have not changed since *Collier* was decided. What has changed since *Collier* was decided is the composition of this Court, which is not a valid reason for ignoring *stare decisis* principles. *See Wheatfall v. State*, 882 S.W.2d 829, 843 (Tex.Cr.App.1994) (change in court membership not sufficient reason to ignore *stare decisis* principles). We decide that the court of appeals could not reform the trial court's judgment to reflect a conviction for the unrequested lesser-included, Class A misdemeanor assault offense, since it was not submitted in the jury charge.

Presiding Judge Keller's dissenting opinion asserts that this Court's 8–1 majority opinion in *Stephens* cannot supply the "overreaching"[7] rationale for Judge Mansfield's lead plurality opinion in *Collier*, primarily because *Stephens* is a double jeopardy case that does not apply in the reformation context. *See Dissenting op.* at 192–93 (Keller, P.J., dissenting).[8] However, the State's "overreaching" con-

---

dence to prove the aggravating element of that offense, the Double Jeopardy Clause bars a subsequent prosecution for a lesser included offense," apparently because "[n]othing prevented the State from requesting a lesser included offense instruction" at the first trial. *See Stephens*, 806 S.W.2d at 818–19 (maj. op.) and at 830–31 (McCormick, P.J., dissenting to denial of State's motion for reh'g) (criticizing "overreaching" rationale in the majority opinion); *Collier*, 999 S.W.2d at 792–93 (McCormick, P.J., dissenting to denial of State's motion for reh'g) (majority opinion in *Stephens* "closely parallels" the reasoning of Judge Mansfield's lead opinion in *Collier*). In *Ex parte Granger*, a majority of this Court reiterated the "overreaching" rationale from *Stephens* that *"the State had, at the first trial, failed to pursue the lesser included offense charge ...."* *See Ex parte Granger*, 850 S.W.2d 513, 519–20 (Tex.Cr.App.1993) (Campbell, J., joined by Miller, White, Baird, Overstreet and Meyers, JJ.) (emphasis in original) and at 528 n.13 (Clinton, J., dissenting).

6. Since the record in this case does not reflect that "one of the parties asked for but was denied" a lesser-included offense instruction, this case does not require this Court to decide whether an appellate court may reform a judgment to reflect a conviction for the lesser-included offense in these circumstances. *See Collier*, 999 S.W.2d at 782 (plurality holding that a court of appeals may reform the judgment in these circumstances) and at 790–91 (Johnson, J., concurring to denial of State's motion for reh'g) (discussing possible "majority" holdings in *Collier*) and at 790–91 (McCormick, P.J., dissenting to denial of State's motion for reh'g) (same).

7. The term "overreaching" that has been used to describe the State's conduct in cases like this is taken from this Court's opinion on original submission in *Garrett v. State* and from Judge McCormick's dissenting opinion on rehearing in *Stephens*. *See Garrett v. State*, 749 S.W.2d 784, 794 (Tex.Cr.App.1986) (op. on orig. subm'n); *Stephens*, 806 S.W.2d at 831 (McCormick, J., dissenting on reh'g).

8. Judge Mansfield's lead plurality opinion in *Collier* decided that the judgment in that case could not be reformed to reflect conviction

duct in both the double jeopardy and the reformation contexts is the same, thus requiring similar treatment and analysis.[9] A rejection by a majority of this Court of the "overreaching" rationale in the reformation context would undermine this rationale in the double jeopardy context, which could very well require a reexamination of this Court's 8–1 majority opinion in *Stephens*.[10]

■ Presiding Judge Keller's dissenting opinion also asserts that *Collier* contains no majority holding, because Judge Mans-

field's lead plurality "opinion and Judge Keasler's concurring opinion contain entirely disparate rationales." *See Dissenting op.* at 194. But, the rule for determining a majority holding in a case decided by a fragmented court applies when there are "disparate rationales" for the result. *See Marks*, 430 U.S. at 193, 97 S.Ct. 990 (when "a fragmented Court decides a case *and no single rationale explaining the result enjoys the assent of five Justices*, the holding of the Court may be viewed as the position taken by those Members who concurred in the judgments on the narrowest

for a lesser offense for much the same reasons that the majority opinion in *Stephens* decided that double jeopardy principles prohibited a subsequent prosecution for the lesser offense. *See Collier*, 999 S.W.2d at 782 (Mansfield, J.) and at 792 (McCormick, P.J., dissenting on reh'g) (reasoning of Judge Mansfield's lead plurality opinion "closely parallels" reasoning in *Stephens* ).

9. We also note that this Court's decision in *Stephens* extended its "overreaching" rationale to the reformation context when it also stated in *dicta* that "this Court does not have the authority to reform a conviction of a greater felony found to be based on insufficient evidence to lesser felony, which the evidence will support." *See Stephens*, 806 S.W.2d at 818 n. 8. We further note that the Wisconsin Supreme Court's majority decision in *Myers* also relied on the "overreaching" rationale in construing a Wisconsin rule of appellate procedure, similar to the ones discussed in Judge Keasler's concurring opinion in *Collier*, as not authorizing reformation in cases like this. *See Myers*, 461 N.W.2d at 779–80. Judge Mansfield's lead plurality opinion in *Collier* is not the only judicial decision to rely on an "overreaching" rationale in a reformation context.

10. Presiding Judge Keller's dissenting opinion also asserts that, because a "jury's verdict on a greater offense necessarily constitutes a finding on every essential element of a lesser-included offense," *Collier* was wrong to conclude that "insufficiency of the evidence of an aggravating element of an offense may result in an acquittal rather than in conviction of the unaggravated lesser-included offense."

*See Dissenting op.* at 192. However, an overwhelming majority of this Court did not accept this argument when it was presented in dissenting opinions in *Stephens* in 1990 and in *Collier* in 1999. *See Collier*, 999 S.W.2d at 792–93 (McCormick, P.J., dissenting on reh'g, joined by Keller, J.) (*Stephens* "fail[ed] to appreciate the legally significant distinction between when a *jury acquits* a defendant of the greater offense versus when a *jury convicts* the defendant of the greater offense but an appellate court decides the evidence is insufficient to support only an aggravating element of the greater offense") (emphasis in original) and at 795 (when jury convicts defendant of greater offense, it necessarily convicts him of lesser offense, so reforming judgment to reflect conviction of lesser offense would reflect a "true finding of the fact finder") (internal quotes omitted); *Stephens*, 806 S.W.2d at 821 (McCormick, J., dissenting) ("Had Haron Stephens been tried for aggravated rape and a jury had found him not guilty, then I might agree that the State could not retry him for the lesser included offense of rape. But that is not what happened to Stephens. Stephens was tried and a jury found him *guilty* of aggravated rape. In finding him guilty of this greater offense, the jury *necessarily* found Stephens guilty of the lesser included offense of rape.") (emphasis in original) and at 833–34 (double jeopardy principles should not prohibit a subsequent prosecution of Stephens for rape "regardless of whether [this] predicate or lesser included offense was *separately* submitted to the trier of fact as an alternative basis for conviction" in his earlier prosecution for aggravated rape) (emphasis in original).

grounds") (emphasis supplied). In determining "the holding of the Court" in these cases, this rule does not search for a majority rationale, it searches for the "position taken by those [Judges] who concurred in the judgment[ ] on the narrowest grounds." *See id.* The position taken by those Judges "who concurred in the judgment[ ] on the narrowest grounds" in *Collier* is that when "the jury charge contains no lesser included offense instruction and neither party has requested one,[ [11] ] the appellate court cannot reform the judgment to reflect conviction of the lesser offense." *See also Collier,* 999 S.W.2d at 791 (McCormick, P.J., dissenting on reh'g) (also characterizing this as majority holding in *Collier* ).[12]

Judge Cochran's dissenting opinion seems to suggest that this Court is at liberty to decide the issue presented in this case as one of first impression. *See Dissenting op.* at 189–91 (Cochran, J., dissenting). The Court's opinion, however, applies majority decisions in two prior cases [13] both of which rejected the principal arguments presented in Judge Cochran's dissenting opinion. Judge Cochran's dissenting opinion does not address the *stare decisis* concerns presented in this case or state how the Court disserves common sense and Texas citizens by following this Court's prior decisions.[14]

The judgment of the court of appeals is affirmed.

JOHNSON, J., filed a concurring opinion.

KELLER, P.J., filed a dissenting opinion in which COCHRAN, J. joined.

COCHRAN, J. filed a dissenting opinion.

WOMACK, J., dissented.

JOHNSON, J., concurring.

I join the Court's opinion.

Following the dictates of *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997), the court of appeals found that the state had failed to prove an element of the charged offense, that no jury instruction on a lesser-included offense had been requested by either advocate, and that the trial court had not included such an instruction *sua sponte.*[1] *Haynes v. State,* 254 S.W.3d 466 (Tex.App. Houston–1st 2007).

The court of appeals determined that the hypothetically correct jury charge would not have included the missing ele-

---

**11.** *See* Footnote 6 (noting that this case does not require this Court to decide whether an appellate court may reform a judgment to reflect a conviction for a lesser offense when "one of the parties asked for but was denied" an instruction on the lesser offense).

**12.** The remaining arguments presented in Presiding Judge Keller's dissenting opinion (persuasive though they may be) were raised and apparently rejected by a majority of this Court in *Collier. See Collier,* 999 S.W.2d at 785–91 (Keller, J., dissenting).

**13.** *See Collier,* 999 S.W.2d at 782 (Mansfield, J.) and at 783–85 (Keasler, J., concurring); *Stephens,* 806 S.W.2d at 813–20.

**14.** It should be noted that the rule applied in this case should be changed through the legis-

lative or rule-making process rather than through judicial activism. *Compare Collier,* 999 S.W.2d at 783–85 (Keasler, J., concurring) (reformation not permitted in cases like this, because rules of appellate procedure do not authorize it). This could also have been accomplished at any time during the almost 10 years since *Collier* was decided.

**1.** As in *Stephens v. State,* 806 S.W.2d 812 (Tex.Crim.App.1990), a double-jeopardy case, the state contributed to the error. *Id.* at 818 ("Nothing prevented the State from requesting a lesser included offense instruction. . . . By electing to proceed only on the greater offense, the State can hardly claim that it did not contribute to the error.").

ment, found that the evidence was therefore legally insufficient to support an element of the offense, and rendered a judgment of acquittal. The state appealed, asserting that the court of appeals should have reformed the judgment to reflect conviction of misdemeanor assault.[2]

In this case, the state urges us to overrule *Collier v. State*, 999 S.W.2d 779, 787 (Tex.Crim.App.1999), because "reformation is the defendant's and not the State's remedy...." State's brief at 8. If that is an appropriate reason for overturning *Collier*, then we must wait for a case in which the defendant, not the state, is requesting reformation.

The state also argues that "the issue on which *Collier* turned" was a "misguided procedural default determination ..." and that "acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime"; here "there was only a failure in the proof of an aggravating element of the offense and not the actual crime." *Id.* at 8–9. It appears that the state equates the crime alleged in the indictment with the crime proved at trial. If aggravated robbery is the crime alleged, it can be proved only if all elements, including the aggravating factor, are proved. If "there was only a failure in the proof of [the] aggravating factor," then robbery has been proved. But robbery was not the offense alleged in the indictment, and there has therefore been a failure in the state's proof of the actual crime alleged. As Judge Campbell said in *Stephens*, "The State, with respect to the lesser included offense, argues that a reversal based on insufficiency of the evidence as to the aggravating element should not be accorded the same status as

---

**2.** The state's argument is based entirely on the dissenting opinion in *Collier v. State*, 999 S.W.2d 779, 787 (Tex.Crim.App.1999). But as the dissent in this case notes, the narrowest rule can be discerned by counting the number of judges who were aligned with each position; eight judges would allow reformation if lesser-included instructions had been submitted to the jury, while five would deny reformation if such an instruction was neither requested nor submitted. Thus, while the lead opinion garnered only four votes, *Collier*'s holding had five votes, a majority of the Court.

I do not take "narrowest ground" to mean the legal ruling that is most restrictive. My interpretation of "narrowest ground" is that ground on which at least five judges agree, regardless of rationale for the agreement. Therefore, while the most restrictive ground— the lesser-included instruction was not given, not requested, or requested but denied—was supported by four judges, the narrowest ruling in *Collier v. State*, 999 S.W.2d 779 (Tex. Crim.App.1999), is the judgment supported by five judges—a judgment may not be reformed unless the lesser-included offense that will be substituted was submitted to the jury.

While the rationale of the lead opinion was based on persuasive authority from a sister court, and Judge Keasler based his rationale on a plain-language reading of TEXAS RULE OF CRIM. PROC. 43.2(c), it can be argued that the rationales expressed in the lead opinion and Judge Keasler's concurrence are, in their essence, the same. The lead opinion expressed the holding in the positive ("court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if ... the jury was instructed on the lesser included offense ...."), while Judge Keasler's concurring opinion expressed the concept in the negative ("court of appeals cannot reform a judgment to reflect a conviction for a lesser-included offense unless that lesser-included offense was submitted in the jury charge."). *Collier*, 999 S.W.2d at 782, 784. As Judge Keasler wrote, the " 'judgment that the trial court should have rendered' can only be a judgment that the trial court was capable of rendering, given the instructions to the jury. If a jury is only instructed on one offense, then the trial court can only render judgment on that offense or a judgment of acquittal." *Id.* at 784. In the end, it matters not whether the instruction was not requested, or was requested but denied, the result is the same; the instruction was not given.

other appellate reversals because the issue of the lesser included offense was never presented to the jury.... We find [this] argument[ ] unpersuasive." *Stephens v. State,* 806 S.W.2d 812, 819 (Tex.Crim.App. 1990).

Before trial, the power lies wholly with the state. The state has the burden of proving an accusation, but it also has great discretion as to what that accusation will be. As a general rule, the state has more resources available to it, particularly investigatory resources. The state gathers the evidence, and on the basis of that evidence, chooses what offenses to allege in the charging instrument. The state may amend the indictment or information, abandon counts or elements, or dismiss and refile. It may restrict defense access to physical evidence. State witnesses are not compelled to communicate with defense counsel, and their statements do not have to be divulged until after they testify on direct examination. Although many prosecutors' offices do let defense counsel see physical evidence and witness statements before trial, they are not required to do so, and some offices do not do so.

At trial, the balance of power shifts somewhat. The state still controls the content of the indictment and most of the evidence, but now the defendant has more opportunity to challenge that evidence. If defense counsel determines that the state has failed in its burden to prove each and every element of the charged offense, then the choice of requesting instructions on lesser-included offenses—or not—must be made. At times, the decision is influenced by a client who adamantly opposes instructions on lesser-included offenses. The gamble for the defense is that the jury will discern the failure of proof and, with no other choice available, acquit. The choice is big win versus big loss.

Wise prosecutors allege only what the evidence supports. At times, evidence that appears to support a charge may have been oversold by a witness and actually provides insufficient support for the indicted offense but quite nicely supports a lesser-included charge. At that point, just as for the defendant, the choice of requesting instructions on lesser-included offenses—or not—must be made. A prosecutor is well served by the words of TEX.CODE CRIM. PROC. art. 2.01: "It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done." Art. 2.01 instructs a prosecutor to go not with what one "knows," but with what one can prove beyond a reasonable doubt. In such a case, seeing that justice is done may mean letting loose of the charged aggravated robbery and accepting that the right verdict is robbery. The gamble for the state in choosing not to request lesser-included-offense instructions is that the jury will convict on the charged offense, in spite of weak (and possibly insufficient) evidence—again, big win versus big loss. The prosecutor who gambles that the jury will convict on weak evidence and so does not hedge the bet with a lesser-included-offense instruction has chosen a path that may indeed cause a defendant who is guilty of some crime—one of the lesser-included offenses—to go free. If the prosecutor chooses to cling to the wreckage of that particular Titanic instead of choosing the lifeboat of a lesser-included offense, then he or she must also accept the consequences that follow. The consequence of failing to carry the state's burden of proof is an acquittal.

In this case, both sides went for the big win, and inevitably one side—here the state—got the big loss instead. Regardless of which side chooses to "go for broke," it may be a valid strategic choice from which neither side should be rescued.

192

KELLER, P.J., dissenting in which COCHRAN, J., joined.

In a fractured decision, in which no opinion commanded a majority, the Court in *Collier v. State* came to the remarkable conclusion that insufficiency of the evidence of an aggravating element of an offense may result in an acquittal rather than in conviction of the unaggravated lesser-included offense.[1] This conclusion is remarkable because a jury's verdict on a greater offense necessarily constitutes a finding on every essential element of a lesser-included offense.[2] Despite the fact that the lead opinion in *Collier v. State* was only a plurality, the Court contends that we are bound to follow *Collier* as a matter of *stare decisis,* and as a consequence, declines to re-examine the merits of the positions taken by the various opinions in that case. Because I disagree with the conclusion that we are bound by *Collier,* and because I disagree with *Collier,* I respectfully dissent.

The Court's first reason for concluding that we are bound by *Collier* is that the lead opinion's "overreaching" rationale can be traced back to earlier majority opinions in *Stephens v. State*[3] and *Ex parte Granger.*[4] But *Stephens* is distinguishable because in that case the defendant asked for but was denied submission of a lesser-included offense, while in *Collier* and the present case, neither party asked for the submission of a lesser-included offense.[5] Even though the State in *Stephens* did not

oppose the defendant's request, it did not join the request either,[6] and so, at least arguably, the State relinquished conviction on the lesser-included offense. Although *Granger* did not appear to view *Stephens* so narrowly, instead citing *Stephens* broadly for the proposition that a State's failure to request a lesser-included offense could prevent the State from prosecuting that offense in a subsequent trial, *Granger* was a case where the State prevailed because it *did* request the lesser-included offense,[7] and so the Court was not required to decide how to treat a situation in which neither party requested the instruction.

Even read broadly, however, *Stephens* and *Granger* are distinguishable for another reason: In those cases, the State sought to prosecute the defendant a second time, albeit only for the lesser-included offense, and the defendant interposed a claim of double jeopardy.[8] The Court was not called upon in either of those cases to determine whether, in the *first* prosecution, reformation to a lesser-included offense (and remand for re-sentencing) would have been the appropriate remedy for an appellate finding of legally insufficient evidence.[9] Indeed, the lead opinion in *Collier* observed that the reformation question before it was "one of first impression in this Court," and neither the lead opinion nor Judge Keasler's concurring opinion even cited to *Stephens* or *Granger.*[10]

1. *See* 999 S.W.2d 779, 779–83 (Tex.Crim.App.1999)(plurality op.); *id.* at 783–85 (Keasler, J., concurring); *see also id.* at 785–90 (Keller, J., dissenting).

2. *See Ex parte Granger,* 850 S.W.2d 513, 519 (Tex.Crim.App.1993).

3. 806 S.W.2d 812 (Tex.Crim.App.1990).

4. Court's op. at 5.

5. *Stephens,* 806 S.W.2d at 817.

6. *Id.* at 817–18.

7. *Granger,* 850 S.W.2d at 519–20.

8. *See Stephens* and *Granger,* generally.

9. *See id., passim.*

10. *See Collier,* 999 S.W.2d at 779–85. But those cases were discussed in Presiding Judge McCormick's opinion dissenting to the denial of the State's motion for rehearing. *See id.* at 792–93.

And the procedural posture of the case crucially impacts the double-jeopardy question. Because an acquittal is considered a jeopardy-terminating event, subjecting a defendant "to postacquittal factfinding proceedings *going to guilt or innocence* violates the Double Jeopardy Clause."[11] But the reformation remedy considered in *Collier* (and here) would not result in a complete acquittal of the offense (as there would still be a conviction for the lesser-included), and, to the extent subsequent fact-finding proceedings could be characterized as "postacquittal," they involve only the matter of *punishment.*

Moreover the procedural posture was an important part of the "overreaching" rationale. It is worth pointing out that the Court did not, either in *Stephens* or in *Granger,* use the words "overreaching," or "misconduct," or any of their synonyms, to describe a prosecutor's failure to request a lesser-included offense submission.[12] The question presented in *Stephens* and *Granger* was whether the circumstances surrounding the appellate acquittal for a greater offense were sufficiently compelling to permit an exception to the usual prohibition against fact-finding proceedings on guilt after an acquittal; we essentially held that, when the jury charge in the first prosecution did not include the lesser-included offense and the State failed to request it, the circumstances are not sufficiently compelling.[13] That is, the State's "overreaching" simply prevented it from overcoming the usual double-jeopardy rules that operated in a defendant's favor. The "overreaching" rationale did not have independent force outside the double-jeopardy context.

To the extent that the reasoning in *Stephens* and *Granger* can be used to support the idea that a prosecutor's failure to request the submission of a lesser-included offense precludes the remedy of reformation, that reasoning is inconsistent with our later decision in *Malik v. State.*[14] Rejecting the notion that the legal sufficiency of the evidence should be tied to the jury charge that was actually submitted, *Malik* overruled the prior *Benson/Boozer*[15] rule that required the State to object to an error in the charge in order to preserve the appellate court's ability to conduct a sufficiency review under the correct offense elements.[16] Rather, *Malik* held that, even absent a State objection to the charge, legal sufficiency was to be measured by "the elements of the offense as defined by the hypothetically correct jury charge for the case."[17] The *Malik* Court signaled that evidentiary sufficiency was not a game that depended upon what instructions the parties requested: it turned upon "an actual failure in the State's proof of the crime rather than a mere error in

---

**11.** *Smalis v. Pennsylvania,* 476 U.S. 140, 145, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986)(emphasis added).

**12.** *See Stephens* and *Granger, passim.*

**13.** *See Stephens,* 806 S.W.2d at 819 (discussing the State's claim that "reversal based on insufficiency of the evidence as to the aggravating element should not be accorded the same status as other appellate reversals because the issue of the lesser included offense was never presented to the jury"); *Granger,* 850 S.W.2d at 520 (State's failure to pursue

lesser-included offense instruction was the equivalent of the trial being "abandoned or aborted by the state without manifest necessity").

**14.** 953 S.W.2d 234 (Tex.Crim.App.1997).

**15.** *Benson v. State,* 661 S.W.2d 708 (Tex.Crim.App.1982); *Boozer v. State,* 717 S.W.2d 608 (Tex.Crim.App.1984).

**16.** *Malik,* 953 S.W.2d at 236, 239.

**17.** *Id.* at 239.

the jury charge submitted."[18] Indeed, in his concurring opinion in *Malik*, Judge Meyers noted that the *Benson/Boozer* objection requirement (that *Malik* overturned) was "consistent with" the request rule articulated in *Stephens* and *Granger*.[19]

The Court's second reason for concluding that we are bound by *Collier* is that Judge Keasler's concurring opinion controls, because it "contains the narrowest ground upon which five of the judges concurring in the judgment in *Collier* agreed," and the rules of appellate procedure upon which Judge Keasler's opinion were based have not changed.[20] But the Court characterizes Judge Keasler's opinion as the narrowest holding on when a judgment *can* be reformed: if the lesser-included offense is submitted in the jury charge. In *Collier*, the judgment was *not* reformed, so any holding arising from that case must be about when the judgment *cannot* be reformed. The lead opinion is the narrowest with respect to that question: that a judgment cannot be reformed (at least) when the lesser-included offense was not submitted and was not requested.

The conclusion that the plurality opinion articulates the narrowest rule can also be derived from a more common-sense approach. Counting the number of judges aligned with each position, the lead opinion articulates the manner in which all cases would be resolved: eight judges would have allowed reformation if a lesser-included offense instruction had been either submitted or requested, while five judges

would have denied reformation if an instruction was neither submitted nor requested.[21]

Furthermore, Judge Keasler's opinion garnered no other votes. None of the other eight judges on the Court subscribed to the view that the rules of appellate procedure placed a limitation on an appellate court's ability to reform a judgment to reflect a lesser-included offense. The lead opinion's conclusion was based, not upon the rules of appellate procedure, but upon a policy rationale involving "risks and benefits."[22] Because the lead opinion and Judge Keasler's concurring opinion contain entirely disparate rationales (which in turn differ from the dissent), one can derive no binding legal principle from those opinions; all one can do is arrive at a result in a particular case by deciding how a defendant fares under each of the three competing viewpoints and then add up the number of judges who come down on his side. Under these circumstances, we should not hesitate to re-examine *Collier* without the constraints of *stare decisis*.

A re-examination shows *Collier* to be wanting. The lead opinion pointed to no constitutional provision, statute, or appellate rule to support its position.[23] Instead, it relied upon a policy argument expressed in an out-of-state decision.[24] The policy argument was that permitting reformation to a lesser-included offense when the State did not seek to include that offense as an alternative in the jury charge would afford

---

18. *Id.* at 240.

19. *Malik*, 953 S.W.2d at 242 n. 4 (quoting *Granger*, which included a discussion of *Stephens* ).

20. Court's op. at 5–6.

21. *See Collier v. State*, 999 S.W.2d 779, 790 (Tex.Crim.App.1999)(Johnson, J., concurring in denial of State's motion for rehearing).

22. *Collier*, 999 S.W.2d at 781–82 (quoting *State v. Myers*, 158 Wis.2d 356, 461 N.W.2d 777 (Wis.1990)).

23. *See id.* at 779–83.

24. *Id.* at 781–82.

the State all the benefits of its "go for broke" strategy with none of the risks and would rescue the State from "a trial strategy that went awry." [25] There are two problems with this argument.

First it is untrue. As the discussion in *Collier* observes, when neither the State nor the defendant asks for the submission of a lesser-included offense, both parties "go for broke." [26] The State gambles that the jury will decide to convict of a greater offense that is weakly supported by the evidence rather than allow a defendant who is obviously guilty of some crime to go free,[27] while the defendant gambles that the jury will acquit on the basis of the weakness in the evidence with respect to the greater offense because the jury instructions do not cover the crime the jury believes was committed. Both parties avoid the middle option that the jury might be more likely to choose (the lesser-included offense) while pursuing the most favored option (conviction on the greater offense for the State, acquittal for the defendant) and risking the least favored option (acquittal for the State, conviction on the greater offense for the defendant). If one takes into account only the jury verdict, the risks and potential benefits pursued by both sides are equal.

If one takes into account a defendant's ability to appeal, the playing field becomes unequal, but contrary to the discussion in the lead opinion in *Collier*, it is the defendant who benefits disproportionately, not the State. The State cannot appeal an acquittal,[28] but the defendant can appeal a conviction. If the State's strategy fails before the jury, the loss is irrevocable, but if the defendant's strategy fails before the jury, there is still the possibility of succeeding on appeal (as happened in this case). Allowing reformation instead of a full-blown acquittal simply serves to mitigate somewhat the imbalance in favor of the defendant.

The second problem with the lead opinion's argument is that there is no good reason why the courts must insure an equal playing field in this context. The trial is "the main event rather than a tryout on the road." [29] The appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.[30] Appellate remedies should not be easy to procure, least of all a full-blown acquittal— "the greatest form of relief in the criminal system." [31]

Moreover, equalizing the playing field in the manner contemplated by the lead opinion in *Collier* is simply inconsistent with what legal-sufficiency reviews are all about. Legal-sufficiency claims are due-process claims,[32] and we have recognized that the remedy for a due-process claim should be narrowly tailored to neutralize the taint of the constitutional violation.[33] As explained above, the gravamen of a legal-sufficiency claim is the State failing

25. *Id.* (discussing *Myers*).

26. *Id.* at 782.

27. *See id.*

28. *United States v. Wilson*, 420 U.S. 332, 352, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)

29. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

30. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

31. *Malik*, 953 S.W.2d at 239.

32. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

33. *Cook v. State*, 940 S.W.2d 623, 628 n. 7 (Tex.Crim.App.1996).

to prove its case, so the remedy should be narrowly tailored to neutralize that wrong. We should not be concerned in the legal-sufficiency context with missteps made by the State regarding what is included in the jury charge. A misstep in the jury charge can be remedied by means other than an acquittal, such as a new trial on the lesser-included offense.[34]

Judge Keasler's concurring opinion in *Collier* relied upon a rule of appellate procedure for the proposition that appellate courts simply do not have the power to reform a judgment to a lesser-included offense if the lesser-included offense was not submitted in the jury charge.[35] I must respectfully disagree. Rule 43.2 permits an appellate court to "reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered."[36] Judge Keasler concluded that the trial court would be authorized to render judgment for a lesser-included offense only if the lesser-included offense had been submitted to the jury.[37]

But this reasoning does not really account for the unique features of a legal-sufficiency claim. When the evidence is sufficient to support the greater offense but also raises the lesser-included offense, submission of the lesser-included offense is optional with the parties.[38] The situation is different, however, when the evidence is legally insufficient to support the greater offense. A finding of legally insufficient evidence to support an offense is tantamount to a finding that the offense should never have been submitted to the jury.[39] It follows that, if the legal insufficiency goes only to an element that distinguishes a greater offense from one that is lesser-included, then only the lesser-included offense should have been submitted to the jury. Under those circumstances, had a motion for directed verdict been presented at the close of the evidence, the trial court would have been required to render a judgment of acquittal on the greater offense and to submit the lesser-included offense to the jury. But a defendant is not required to file a motion for directed verdict to preserve a legal-sufficiency claim on appeal.[40] So, even absent a motion for directed verdict, only the lesser-included offense should have been submitted to the jury. And, as I pointed out at the beginning of this opinion, because the jury actually found the greater offense, it necessarily found every element of that lesser-included offense. Since the jury found every element of the only offense that it should have been permitted to consider, the judgment the trial court should have rendered was a judgment of convic-

34. *United States v. Hunt*, 129 F.3d 739, 745–46 (5th Cir.1997)(remedy of reformation allowed even if lesser-included offense was not submitted to the jury unless the defendant was prejudiced, in which case the remedy would be a new trial); *see also Rutledge v. United States*, 517 U.S. 292, 305–06, 305 n. 15, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996)("federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense" if "no undue prejudice will result to the accused").

35. 999 S.W.2d at 783–85.

36. Tex.R.App. P. 43.2(c).

37. *Collier*, 999 S.W.2d at 784.

38. *Delgado v. State*, 235 S.W.3d 244, 249–250 (Tex.Crim.App.2007).

39. *Malik v. State*, 953 S.W.2d at 236–37.

40. *Moff v. State*, 131 S.W.3d 485, 488–89 (Tex.Crim.App.2004).

tion for the lesser-included offense.[41]

I respectfully dissent.

COCHRAN, J., dissenting.

I join Presiding Judge Keller's dissenting opinion. I write separately because this case exemplifies why we should not analyze these "lesser-included" issues as if the parties were engaged in a legalistic chess or "chicken" game. The Court assumes that the State uses Machiavellian "overreaching" strategies and consciously decides to "go for broke" when it fails to request jury instructions on lesser-included offenses. As punishment for a trial strategy that goes awry, an appellate court that finds the evidence insufficient to prove the aggravated offense for which the defendant was convicted may not modify the judgment to show conviction for any lesser-included offense for which the evidence is clearly sufficient unless the State requested a jury instruction on the lesser-included offense. The defendant is simply acquitted. The citizens suffer because the State was not prescient enough to anticipate a successful appellate legal-sufficiency challenge. And the defendant receives an undeserved windfall of total acquittal instead of conviction on an offense for which the jury necessarily found him guilty and for which the evidence is clearly sufficient. This result does not comport with common sense or justice. And this case shows why.

Appellant was charged with the felony offense of assaulting a member of his household, enhanced by a prior conviction for the same domestic violence offense. The evidence at trial showed that Anissa, appellant's on-again-off-again girlfriend of fourteen years, had most recently lived with him from September 2004 until January 2005, when she moved out of her own apartment and back into her mother's home to get away from him. On February 2, 2005, appellant came over to Anissa's mother's home. When Anissa opened the door and stepped outside to talk to appellant, he struck her in the face, "busting" her lip and causing her pain. She ducked back inside the house, slammed the door and locked it. When she heard a loud noise outside, she looked out the window to see that appellant had thrown a brick at her car window and shattered it. Appellant later sent Anissa a letter from jail, explaining that he had "tripped out," promising to get himself together "for real this time," and asking Anissa to "help [him] out this one time" and to tell "them white folks" that he didn't put his hands on her. He closed with, "I'm not mad. I did this to myself. Please get out this [sic]. I hate I did this."

The trial judge included the following definitions in her jury charge:

"Household" means a unit composed of persons living together in the same dwelling, whether or not they are related to each other.

"Member of a household" includes a person who previously lived in a household.

No one objected to these definitions which are verbatim recitals of two Family Code statutes.[1] During its closing argument,

---

41. Once rendition of the judgment for the lesser-included offense occurs pursuant to Rule 43.2(c), a remand for a new sentencing hearing is authorized under Rule 43.3(a). TEX.R.APP. P. 43.3(a)("When reversing a trial court's judgment, the court must render the judgment that the trial court should have ren-

dered, except when . . . a remand is necessary for further proceedings.").

1. TEX. FAM.CODE § 71.005 (" 'Household' means a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other."); TEX. FAM.CODE § 71.006 (" 'Member of a

the State pointed to this law in the jury charge and noted that, under Texas law, it did not matter that Anissa was not living in the same household as appellant on the very day of the assault.[2] Appellant did not disagree. His defensive theory was that Anissa simply made up the story about being assaulted because she was mad that appellant threw a brick through her car windshield. After all, she had prior felony convictions and that proved she was "a con artist by trade. She can't be believed."

The jury found appellant guilty of the enhanced family-violence offense.[3] Appellant stipulated to two prior felony convictions, and the trial judge sentenced him to twenty-five years' imprisonment—the minimum punishment for an habitual offender.

On appeal, appellant argued that the evidence was legally insufficient to support his conviction for felony assault because the State failed to prove that Anissa was a member of appellant's household at the time of the assault. The court of appeals agreed with appellant, holding that Sec-

tion 71.006 of the Family Code, which states that a member of the household includes a person who had previously lived in a household, did not apply to domestic-violence prosecutions because it was not explicitly referred to in the Penal Code assault statute, while Section 71.005 was explicitly mentioned.[4] The court of appeals reversed the judgment of conviction and rendered a judgment of acquittal.[5]

There is nothing in the present record that would suggest that the State wanted to "go for broke" by consciously not requesting a lesser-included offense instruction. From all appearances, the trial judge, the defense counsel, and the prosecutor all believed that the trial judge's jury instructions and definitions were legally correct. There was certainly no lack of evidence that Anissa *had* been a member of appellant's household as required by Section 71.006, and there was not a scintilla of evidence that Anissa was, on the day of the offense, literally a member of appellant's household. Thus, it strains all cre-

household' includes a person who previously lived in a household").

**2.** The prosecutor argued:
> And the question is whether or not he assaulted a member of his household. We know they were members of the household. The law says it doesn't matter if they were living together on February 2, 2005, or if they had kids together or if they were married. The law is very clear. And you know what the law is because it's in the Charge. And you are governed by the law in the Charge. And the law says that if you previously lived together, you are a member of a household.

**3.** The jury was not informed that Anissa was the complainant in the prior domestic-violence assault conviction as well as in the current case.

**4.** *Haynes v. State*, 254 S.W.3d 466, 469–70 (Tex.App.–Houston [1st Dist.] 2007) ("We hold that the 2003 version of Penal Code

section 22.01, which expressly refers to Family Code section 71.005, does not authorize the State to use Family Code section 71.006 to define who constitutes a household member for the purposes of committing felony assault. The State, therefore, must prove as an element of the offense of felony assault on a household member that the defendant and the complainant were living together in the same dwelling when the offense was committed. The hypothetically correct jury charge in this case would not have included the definition from Family Code section 71.006, and there is no evidence that appellant and complainant lived together in the same dwelling when appellant struck her in the mouth.").

The pertinent Penal Code provision has since been revised, but it still does not mention section 71.006. *See* TEX PENAL CODE § 22.01(b)(2) (Vernon Supp.2007).

**5.** The State petitioned this Court to review the correctness of the court of appeals's statutory analysis, but we did not grant that ground for review.

dulity to conclude that the State was somehow "overreaching" in failing to request a lesser-included charge on simple assault, or that this failure to include a lesser-included charge somehow affects the sufficiency of the evidence to prove a simple assault.

The majority is correct in stating that a plurality of this Court held, in *Collier v. State*,[6] that if the State fails to request an

6. 999 S.W.2d 779 (Tex.Crim.App.1999).

7. *Id.* at 781–82.

8. 158 Wis.2d 356, 461 N.W.2d 777 (1990).

9. *See Rutledge v. United States*, 517 U.S. 292, 306, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) ("Federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense. This Court has noted the use of such a practice with approval."); *State v. Dunn*, 850 P.2d 1201, 1209–10 & n. 4 (Utah 1993) ("Numerous state and federal courts have concluded that when a defendant is convicted of an offense but an error occurred at trial, a court has the power to enter judgment for a lesser included offense rather than ordering a retrial if (i) the trier of fact necessarily found facts sufficient to constitute the lesser offense, and (ii) the error did not affect these findings"; listing states and federal jurisdictions that follow this rule); *State v. Briggs*, 787 A.2d 479, 486–487 (R.I.2001) (approving sentencing remand where, although jury was not instructed on lesser offense, defendant's trial testimony constituted evidence meeting all elements of lesser-included offense of larceny); *State v. Farrad*, 164 N.J. 247, 753 A.2d 648, 659 (2000) (reversing case for new trial but noting that "guilty verdict may be molded to convict on a lesser-included offense even if the jury was not instructed on that offense if (1) defendant has been given his day in court, (2) all the elements of the lesser included offense are contained in the more serious offense and (3) defendant's guilt of the lesser included offense is implicit in, and part of, the jury verdict") (internal quotation marks omitted); *People v. Patterson*, 187 Colo. 431, 532 P.2d 342 (1975) (sentencing remand may be

instruction on a lesser-included offense, the appellate courts will not reform the judgment to reflect conviction for the lesser offense that the evidence does clearly establish as this would "rescue [the State] from a trial strategy that went awry."[7] In *Collier*, the plurality quoted and relied upon a Wisconsin Supreme Court decision, *State v. Myers*.[8] But many state and federal jurisdictions[9] have adopted the logical

proper even though lesser-included offense was not charged to jury; court reasoned defendant has been given his day in court and his guilt of lesser-included offense is implicit and part of jury's verdict on greater offense); *Shields v. State*, 722 So.2d 584, 585–87 (Miss. 1998) (rejecting the reasoning and rule in *Myers*, noting the large number of states and federal jurisdictions that follow the test set out in *Allison v. United States*, 409 F.2d 445 (D.C.Cir.1969) and "hold[ing] that the lesser included offense need not be before the jury in order to apply the direct remand rule" of conviction of the lesser-included offense and remand for resentencing when, on appeal, the evidence is found to be insufficient on the greater offense).

After discussing the views of various jurisdictions, the Mississippi Supreme Court stated, "Today, this Court declines to follow the approach taken by Wisconsin, Alabama, and the Ninth Circuit." Instead, it followed the reasoning of the United States Supreme Court and the rule in those jurisdictions—including the Fifth Circuit in *United States v. Hunt*, 129 F.3d 739 (5th 1997)—that permit appellate courts to modify the judgment to reflect conviction of the lesser-included offense if it finds the evidence legally insufficient on the greater offense when "no undue prejudice will result to the accused." *Hunt*, 129 F.3d at 746; *see also United States v. Alvarez*, 451 F.3d 320, 328 (5th Cir.2006) (following *Hunt* and holding that, while evidence was insufficient to prove "playground" element of drug-distribution offense, appellate court could modify conviction to show conviction of lesser-included drug offense). *Compare State v. Brown*, 360 S.C. 581, 602 S.E.2d 392, 398 (2004) (collecting cases from states that do and do not permit "direct remand" when jury was not instructed on lesser-included offense, joining those jurisdictions that do not allow

and common sense "direct remand rule" which is "grounded on the fact that guilt of a true lesser included offense is implicitly found in the jury's verdict of guilt on the greater offense." [10]

The law concerning jury instructions and lesser-included offenses is not a game in which conviction or acquittal of a criminal offense depends upon Machiavellian trial strategy. It should depend upon the facts and the law. Here, it is not disputed that the evidence is legally sufficient to support appellant's conviction for simple assault, regardless of whether Anissa was or was not a member of his household on the day of that assault. Nor has appellant made any claim that his due process rights would be prejudiced by entry of a conviction for the lesser-included offense of which the jury necessarily found him guilty.[11] We do a disservice to common sense and Texas citizens by ordering his acquittal of all charges when the evidence is legally sufficient to support a conviction for simple assault, and the jury necessarily found him guilty of simple assault.

---

"direct remand" unless jury was so instructed). *See generally,* James A. Shellenberger & James A. Strazella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies,* 79 Marq. L.R. 1, 183–189 (Fall 1995) (noting that appellate courts can avoid potential double-jeopardy problem of retrial on lesser-included offense by "modifying the judgment to an offense that was necessarily included in the offense for which the defendant had first been convicted," but noting that "there may be situations in which the dynamics of a particular trial record suggest that the LIO should be the subject of a retrial, not an automatic modification.").

10. *Shields,* 722 So.2d at 585.

11. *See Hunt,* 129 F.3d at 746; *see also Stevens v. State,* 422 N.E.2d 1297, 1301 (Ind.Ct.App. 1981) (reviewing record to determine if modification would prejudice defendant; "Where it is evident that defendant has not been mislead and the issues joined under the charging information have been determined, modification, rather than reversal is more appropriate").