

**NUMBER 13-10-233-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ˗ EDINBURG

**RICHARD LEE MAYFIELD,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes
Memorandum Opinion by Justice Vela**

A jury found appellant, Richard Lee Mayfield, guilty of attempted sexual assault.

*See* TEX. PENAL CODE ANN. § 15.01(a) (West 2003); § 22.011(a)(1) (West Supp. 2010).

After finding appellant had two prior felony convictions,[1] the jury assessed punishment at fifty years' imprisonment. By three issues, appellant argues: (1) the evidence is legally insufficient to support his conviction; (2) the trial court erred by failing to include the elements of sexual assault in the application paragraph of the jury charge; and (3) the indictment failed to allege the elements of sexual assault. We affirm.

## I. FACTUAL BACKGROUND

In the morning of June 25, 2009, M.G. went to a Wal-Mart in Edinburg, Texas, and after making a purchase, returned to her vehicle. While sitting in the driver's seat with her door open, appellant, who was wearing a baseball cap pulled down low, lunged at her. His upper body was inside her car, and she was pinned inside. She started screaming; however, appellant grabbed her left leg and ran his hands up her leg, pulling up her skirt at the same time. M.G. testified appellant's hands came to a stop "close to the top of my leg right there in the groin." When appellant asked her, "Do you want to f**k?," she said, "no" and continued screaming. She testified "it sounded like he was laughing . . . like a demon possessed creature." She kicked him two or three times with her high heels, and he ran away. As she backed up her car, she saw appellant "running very quickly, sneaking, like kind of ducking," and then get into an old, white car with a navy blue vinyl roof. As appellant drove away, she memorized his license-plate number and gave it to the 9-1-1 operator.

Shortly thereafter, the police determined the license-plate number was registered to Richard L. Mayfield, whose address was 1014 South 10th Street, Apartment 1 in

---

[1] The indictment's enhancement paragraphs alleged previous convictions for aggravated assault and aggravated robbery.

Edinburg. The police took M.G. to the apartment and allowed her to look at appellant. She testified that even though appellant was not wearing a baseball cap, she "was 99.9 percent sure it was him." She testified that when appellant put on a cap, she told the police officer: "That's him, but it's a different cap." When M.G. asked appellant if he was the person who had just attacked her, he said: "No, I've never seen you before in my life." When the prosecutor asked M.G. if his voice sounded like her assailant's voice, she said, "Basically, yes, but not with that spooky tone that he used when he asked that vulgar question." When the prosecutor asked M.G., "And [at] that time, [M.G.], were you positive that the man that was before you was the same man who attacked you at the Wal-Mart parking lot?," she said, "Yes, I was." During the guilt-innocence phase of appellant's trial, M.G. identified appellant, who was seated in the courtroom, as the person who attacked her in the Wal-Mart parking lot. When the prosecutor asked her, "[D]o you believe you were going to be sexually assaulted that day?," she said, "Yes. Because of the question that he asked me, and his hands on my leg it was obvious that he wanted me, not my purse."

On cross-examination, when defense counsel asked M.G., "Did this individual get inside the car with you?", she said, "His upper body was inside the car, and his face was right in front of mine." She said, "It was a surprise attack" and "I was looking mainly into his eyes."

Investigator Oscar Trevino testified that on the day of the incident, appellant waived his *Miranda* warnings and gave a written statement about what had happened earlier that day. In his statement, appellant stated, in relevant part, that:

3

This morning I went to the Wal-Mart in Edinburg on 107. I went there to buy some medicine for jock itch and athelete's [sic] foot. Before I could go inside the store I saw a lady walking out that looked like an ex-girlfriend of mine named Julie. She was wearing a long ankle length dress. I followed her to her car. She got inside the car and I went up to her and poked her on her side thinking that it was Julie. I called her by the name Julie and she got scared and kicked me. I got scared and left cause I didn't want to bother someone I didn't know. I was wearing a dark blue uniform with a name tag and a black cap. I left the parking lot and went home. I was driving my brother's car, a white 1993 Chrysler with a blue canvas top. The police showed up at my house and questioned me. By this time I had already taken off my uniform because I was going to shave and shower. I was going to leave. I had somewhere to go. They brought the same lady to look at me. She said that I looked somewhat like the person they were looking for. I denied being at Wal-Mart. I told the police that I had not been there because nothing happened. I just kept denying the accusation because I didn't do anything to her.

Investigator Trevino testified that prior to taking appellant's statement, he questioned appellant about what had happened. Investigator Trevino stated appellant "denied ever being at Wal-Mart. He denied ever leaving his home. He denied having any contact with any female, or anybody, whatsoever." Investigator Trevino also asked appellant about "Julie, to make a comparison as to Julie and the victim to see if there was any similarities between them. I asked him if he could give me her full name and address and telephone number so I could get in contact with her and speak with her. . . ." However, appellant did not provide any information about her except for her first name, "Julie," and that she was a girlfriend "from way back when." Investigator Trevino explained that "I was hoping to get a hold of this lady to see if she looked exactly like the victim to where there could have been a mistaken identity or something as to the effect of what he was alleging here on his statement. But that didn't happen."

Defense counsel called Officer Jorge Gomez as a witness. Officer Gomez testified he recovered a navy blue shirt, a ball cap, a belt, and a pair of pants from the apartment where appellant lived. Defense counsel introduced these items into evidence. The left pocket of the shirt had a tag, which stated "Richard." On the right side, the shirt said, "Royal Freight Pharr, Texas."

Appellant did not testify during the guilt-innocence phase of his trial.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant challenges the sufficiency of the evidence to support his conviction.

#### 1. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, "we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of

review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *See id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). In addition, "'[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992)), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).

A person commits the offense of sexual assault if the person intentionally or knowingly (1) "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent," (2) "causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent," or (3) "causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor[.]" TEX. PENAL CODE ANN. § 22.011(a)(1)(A)-(C). "A sexual assault under Subsection (a)(1) is without the consent of the other person if: (1) the actor compels the other person to submit or participate by the use of physical force or violence . . . ." *Id.* § 22.011(b)(1). Section 15.01(a) of the penal code provides that "[a] person commits an offense [of

6

criminal attempt] if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

### 2. Analysis

The evidence supporting the verdict showed that: (1) while M.G. was sitting in her car with the door open; (2) appellant, who was wearing a baseball cap pulled down low, lunged at her, pinning her in the car; (3) appellant grabbed her left leg, which was outside the car, and ran his hands up her leg, pulling up her skirt at the same time; (4) his hands came to a stop close to the top of her leg near her groin; (5) appellant asked her, "Do you want to f**k?"; (6) appellant was laughing like a demon-possessed creature; (7) when M.G. kicked him two or three times with her high heels, he broke off the attack and fled the scene; (8) in his written statement, appellant stated that while he was at Wal-Mart, he saw a woman who looked like his ex-girlfriend and that when the woman got inside her car, he "poked" her on the side, thinking it was his ex-girlfriend; and (9) M.G. identified appellant as the person who attacked her.

The contrary evidence showed that: (1) when M.G. asked appellant if he was the person who had just attacked her, he said: "No, I've never seen you before in my life;" (2) shortly after the incident, when a police officer arrived at appellant's apartment, appellant told the officer he had not been to Wal-Mart earlier that day and that he had just returned from work; (3) shortly after the incident, when M.G. identified appellant as her attacker, he was not wearing a uniform; (4) video tape from a surveillance camera, which recorded a view of the parking lot where M.G. claimed the incident occurred, did not show

7

appellant assaulting M.G.; (5) no physical evidence connected appellant to the assault; and (6) during his trial, appellant was wearing thick glasses; however, M.G. stated that the person who assaulted her was not wearing glasses. In addition, appellant argues M.G.'s testimony is not credible because: (1) she did not report the incident to Wal-Mart employees; (2) she hesitated before reporting the incident to the police; and (3) her out-of-court identification of appellant as her attacker was unreliable.

However, "a jury is permitted to believe or disbelieve any part of a witness' testimony, including a defendant." *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). The jury found M.G.'s testimony to be credible, despite the fact that she testified that appellant told her he had never seen her before. After viewing all of the evidence in the light most favorable to the verdict, we hold a rational trier of fact could have found beyond a reasonable doubt that appellant committed the offense of attempted sexual assault of M.G. Issue one is overruled.

## B. Jury Charge

In issue two, appellant contends the trial court erred by failing to include the elements of sexual assault in the application paragraph of the jury charge. The application paragraph stated:

> Now if you find from the evidence beyond a reasonable doubt that on or about JUNE 25, 2009, in Hidalgo County, Texas, the Defendant, RICHARD LEE MAYFIELD, did then and there, with the specific intent to commit the offense of sexual assault of [M.G.], do an act or acts, to-wit: restrain her, pull up her skirt and tell her "Do you want to fuck", which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you will find the Defendant, RICHARD LEE MAYFIELD, guilty of the offense of Attempted Sexual Assault as charged in the indictment.

Appellant asserts, without citing any authority, that the application paragraph was defective for failing to set out the elements of sexual assault. In addition, he does not cite any authority for the proposition that the application paragraph pertaining to an attempt to commit an offense must include the elements of the offense which the defendant is alleged to have intended to commit. "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Appellant's failure to brief this issue constitutes a waiver of the argument. *See Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000) (stating that failure to cite relevant authority waives error). Issue two is overruled.

## C. The Indictment

In issue three, appellant contends the trial court erred by proceeding to trial on an indictment that failed to allege the elements of a sexual assault. Appellant filed a motion to quash the indictment; however, there is no indication in the record that he ever urged this motion or that the trial court ever heard the motion. Because appellant did not obtain a ruling on his motion, he has waived any error in the indictment. *See Brosky v. State*, 915 S.W.2d 120, 129 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that "[b]y failing to obtain a ruling on the portions of the Motion to Quash pertaining to Count One of the indictment, Brosky waived any error arising from Count One of the indictment."); *Dowler v. State*, 777 S.W.2d 444, 448 (Tex. App.—El Paso 1989, pet. ref'd). Issue three is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of November, 2011.