**William Dexter JOSEPH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0108–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 18, 1984.

Robert J. Sussman, Stanley G. Schneider, Houston, for appellant.

Roe Morris, Houston, for appellee.

Before EVAN, C.J., and DUGGAN and JACK SMITH, JJ.

## OPINION

JACK SMITH, Justice.

A jury convicted appellant of burglary of a habitation with intent to commit rape and assessed his punishment at 75 years incarceration. He brings two grounds of error on appeal.

In his first ground, appellant alleges that the evidence was insufficient to prove that he entered the house with the intent to commit rape. The complainant testified that she was living at her mother's house on August 15, 1983. She and her sister had been at home alone until about 11:30 p.m., when her sister left. The complainant watched television, and then went to bed. Shortly thereafter, she heard a noise and got up to investigate. On opening her bedroom door, she saw appellant a few feet away and screamed.

Appellant reacted by running over and putting his hand over her mouth. He told the complainant, "Don't scream. I'm not gonna hurt you. I'm just here to steal." He asked the complainant if anyone else was in the house, and she shook her head. He asked if anyone was expected to arrive, and she said that her mother was due home in a few moments. He asked her "what kind of things do you have, what kind of stuff," and she responded that they had two televisions, a stereo, and some money. He asked the brand of the stereo, and she said that it was a Sanyo, but that it was broken. She said she did not know the brand names of the televisions. This conversation took place in the complainant's bedroom doorway, with appellant's hand partially covering the complainant's mouth.

Appellant then asked if anyone was in the complainant's room, and she said no. He took her into her room, put his hands on her shoulders, and pushed her down on the bed. As he stood over her, the complainant asked him to take the things he wanted and leave, because her mother was due home. Appellant told her to move back further onto the bed, and he lifted her nightgown. The complainant told him that she had herpes, but he pulled off her panties and raped her.

Appellant then asked the complainant, "Now, where did you say the money was?" She gave him $30, and he asked how to get out of the house. He also asked her if she could identify him, and she said "no" out of fear that he would hurt her. She waited to hear him go into the laundry room to leave

the house, and then called the neighbors and ran out the front door.

When the police arrived, the complainant told them that her attacker had initially claimed that he only wanted money and would not hurt her.

When the sufficiency of the evidence to support a verdict is challenged, the evidence must be viewed in the light most favorable to the verdict. *Penagraph v. State,* 623 S.W.2d 341 (Tex.Crim.App. 1981). The jury is empowered to determine the issue of intent, and the events of a burglary may imply the intent with which the burglar entered. *Marinez v. State,* 654 S.W.2d 500 (Tex.App.—Corpus Christi 1983, no pet.).

Appellant argues that the evidence establishes that, at the time he entered the house, he only had the intent to commit theft, and not the intent to commit rape. Appellant cites *Conrad v. State,* 154 Tex. Crim. 624, 230 S.W.2d 225 (1950), for the proposition that an intent to commit rape that is formed after entry into a house will not support a conviction for burglary with intent to commit rape. In *Conrad,* the state offered into evidence the defendant's written confession, in which he described his intentions as they changed from theft to rape after he entered the victim's house and was unable to find any money. The court held that the state was bound by the evidence it presented, and since the evidence on intent was direct and uncontradicted, no other intent could be implied.

In the case at bar, appellant's description of his intentions was relayed not to the police in a confession, but to his victim when she confronted him. Candor is not the only motive which may be ascribed to appellant's self-serving reassurances to his victim. The jury could have reasoned that appellant's statements were made to calm the complainant and to keep her from screaming, as well as to elicit some degree of cooperation. This is evidenced by her

description of his demands during the sexual act.[1] Further, the jury could have reasoned that appellant's subsequent actions "spoke louder than his words." We hold that the evidence was sufficient to support the jury's finding that appellant entered the house with the intent to commit rape. Appellant's first ground of error is overruled.

In his second ground of error, appellant alleges that the trial court erred in allowing the state to bolster the complainant's in-court identification of appellant as the burglar. After the complainant had described the events of the burglary, she pointed out appellant as the man she saw in her mother's house that night. The prosecutor then asked her the following questions:

Q: Are you certain that's the person who did this to you on that night?

A: Yes.

Q: Is there any doubt in your mind at all?

A: No.

Q: Okay, did you have occasion to see this person again?

A: Yes.

Q: When was that?

A: The following day.

Q: Where did you see this person?

A: Coming down on Tareyton Lane.

Q: What time of day was that?

A: 2:00 o'clock.

DEFENSE: Objection, Your Honor. It's bolstering.

THE COURT: That will be overruled.

DEFENSE: Note our exception.

Q: (PROSECUTOR): Where was he at about 2:00 o'clock?

A: On Tareyton Lane.

Q: Where were you? Where were you actually standing when you saw him?

A: In my car.

Q: Where was your car?

1. Appellant ordered the complainant to spread her legs, move her body, touch his testicles, and put her arms around him while he raped her.

A: On the side of the street, in the front of my house on the street.

\* \* \* \* \* \*

Q: How far away was he at that time?

A: He passed my car. I saw him facing and then he just passed directly beside my car. When he was behind, going east, that's when I got out of my car.

Q: Had you ever seen this person before?

A: No.

\* \* \* \* \* \*

Q: Did you have occasion to see the defendant after this day that you had seen him at 2:00 o'clock the next day?

DEFENSE: Objection, bolstering.

THE COURT: That will be overruled.

DEFENSE: Note our exception.

THE COURT: That means you can answer the question.

THE WITNESS: I saw him two weeks later and I called the police and they went up there to pick him up, but he was not there.

Q: (PROSECUTOR): Okay.

A: He had left.

\* \* \* \* \* \*

Q: What did you do when you went to see the detectives?

A: When I went to see the detectives, I told him who I thought it was, the name and the person.

Q: Okay, did the detective do anything?

A: The detective went and got the person's record and from there he got a picture display.

Q: You looked at a photo display, did you not?

A: Right.

Q: In that photo display, was the defendant's picture there?

A: Yes.

Q: Did you pick it out?

A: Yes.

Q: Did you tell the detective that that was who had committed this offense?

A: Yes.

Q: Two weeks later when you saw him at the U-Totem, you said that you called the police and they came out there, but he was no longer there?

A: Right.

Q: Have you seen the defendant again prior—I'm sorry, after that? Had you seen the defendant again until today in court?

A: No.

We note that most of this testimony came in without objection, and only two questions were objected to on the grounds that they served to bolster the witness's testimony. One question dealt with the time of day the complainant saw appellant on the day after the burglary, and the objection was not timely made before the complainant pronounced her answer. The other question concerned the second encounter after the burglary.

 Appellant misuses the term "bolstering" in his ground of error. Bolstering occurs when a second witness is called to corroborate unimpeached testimony. A witness who has identified a defendant at trial may also testify as to any previous identifications of the defendant, but no one *else* may bolster the witness's testimony by testifying as to the pretrial identification of the defendant by the witness. *Wyatt v. State,* 566 S.W.2d 597 (Tex.Crim.App.1978); *William v. State,* 565 S.W.2d 937 (Tex. Crim.App.1978). No other witness testified about the two encounters described by the complainant in which she saw appellant before his arrest. No bolstering occurred, and the trial court properly overruled appellant's objections.

We also note that the testimony regarding the pretrial photo array was introduced without objection, and the detective who arranged the photo array was allowed to testify, again without objection, as to the complainant's pretrial identification of appellant through that array. Appellant failed to preserve any error; his second ground of error is overruled.

The judgment of the trial court is affirmed.