TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00316-CR






Gary Neil Matney II, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT

NO. CR2007-416, HONORABLE JACK H. ROBISON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Gary Neil Matney II of burglary of a habitation with intent
to commit aggravated assault and assessed punishment at sixty years' imprisonment. Appellant
appeals the trial court's judgment, contending that the evidence is legally and factually insufficient
to support his conviction. We affirm the trial court's judgment. 


BACKGROUND

 The evidence at trial showed that in the early morning hours of October 13, 2007,
appellant went to the home of Terry Kight in Canyon Lake, Texas, and began breaking
glass windows that were located immediately next to the front door. At the time, he was under a
court order to stay away from Kight and her home. He and Kight had previously dated for more than
three years and had a one-year-old daughter, R.M. Kight also had two other children, a fifteen-year-old daughter, S.K., and a twelve-year-old son, D.K. Kight lived in her home with her three children
and her mother, Sharon Davis. At the time of the incident, Kight was not at home, but Davis and
Kight's three children were in the home sleeping when they were awakened by the sound of
breaking glass. 

 Davis testified that she woke up when she heard glass breaking and her grandson
D.K. scream, "Granny, somebody is breaking in[to] the house." Davis immediately got out of bed
and ran to the front door. When she arrived, she saw appellant breaking glass windows directly to
the side of the door and reaching in through the broken glass to unlock the door. After unlocking
the door, appellant realized that the door still would not open because of a long piece of wood
barring it. A neighbor had recently installed the wooden bar as a barricade to keep appellant out of
the home. The bar could be lowered across the door and bolted into place so that a person outside
could not enter. At the time of the incident, the bar was across the door, but it was missing the bolt
necessary to hold it in place. Appellant began trying to lift the bar. When Davis saw what he was
doing, she ran toward the bar, grabbed it, and held it down with her body weight. 

 By that time, S.K. had also run to the front door, where she saw appellant using a
metal rod to break a window next to the door. Davis told S.K. to call 9-1-1, which S.K. did. While
S.K. was on the phone, she saw appellant using the metal rod to break more windows next to the
door and then break a window within the top part of the door, shattering it and sending pieces of
glass falling onto Davis's head. S.K. also saw appellant use the metal rod to hit Davis in the side
at least once. Davis testified that appellant "stabbed," "jabbed," and "poked" the metal rod at her,
trying to get her away from the door, and he hit her with the rod once, leaving a bruise. He also
kicked the door three or four times, trying to break through the barricade. Davis and S.K. testified
that appellant screamed at Davis throughout the incident, calling her names and cussing at her. At
one point, he yelled, "Die, Bitch," to Davis and spit in her face through the broken window. He also
repeatedly demanded that Davis tell him where Kight and his daughter were.

 Meanwhile, Kight's neighbors, brothers David and Shannon Norman, were awakened
by appellant's screaming and the sound of breaking glass. David Norman (David) went out to his
porch and saw appellant on Kight's porch putting his arm through the broken window next to the
door and trying to open the door. David yelled at appellant to leave, and appellant yelled back,
"Well, come get you some." In response, David yelled that he did not want any problems and only
wanted appellant to leave. David then went back inside his house to get his brother Shannon, and
the two of them went over to Kight's house. By the time they got there, appellant was no longer
there. Davis testified that appellant left after David initially yelled at him. David and Shannon
began looking around outside the home for appellant but could not find him. While they were
looking, the police arrived. After speaking with the police, Shannon left in his car to find Kight, who
was at a friend's house, and tell her to go home. As the police officers began searching for appellant,
David waited on the porch of Kight's home with Davis. One of the officers stayed with them and
asked Davis to sit down and begin completing her written statement. 

 Shortly after, Kight arrived and stood on the porch near her mother. Within minutes,
appellant, who had blood on his clothes and arms, arrived on the porch and said, "There you are,"
to Kight. The officer on the porch immediately pulled out his gun and ordered appellant to get on
the ground. Other officers arrived, and they handcuffed appellant, who was beginning to struggle
with them. When the officers brought appellant to his feet and began walking him off the porch, he
lunged at Davis and kicked her. Officers then took him to the ground once more, trying to regain
control of him. Once they did, they picked him up and walked him off the porch toward their patrol
cars. Near the patrol cars, appellant began kicking at the officers and spitting blood at them. 
Officers took appellant to the ground for a third time, but he continued spitting at them from the
ground. One of the officers warned him that if he did not stop his behavior, the officer would use
pepper spray against him. In response, appellant yelled, "Go ahead spray me," several times. 
Eventually, the officer sprayed appellant with pepper spray. Appellant continued to spit at officers
but eventually calmed down and was treated by EMS personnel who were called to the scene. 
Officers then transported appellant to the hospital for further treatment. 


STANDARDS OF REVIEW 

 In determining the legal sufficiency of the evidence, we must view the evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Swearingen v. State,
101 S.W.3d 89, 95 (Tex. Crim. App. 2003). When faced with conflicting evidence, we presume the
trier of fact resolved conflicts in favor of the verdict. Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999). 

 In reviewing factual sufficiency, we must weigh all the evidence in a neutral light and
set the finding aside only if the evidence is so weak that the verdict seems clearly wrong or
manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. 
Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). An appellate court must be
appropriately deferential to the jury's verdict in order to avoid substituting its own judgment for that
of the factfinder. Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The jury is the sole
judge of the credibility of the witnesses and the weight to be accorded their testimony. Id. 


DISCUSSION

 Appellant contends that the evidence is legally and factually insufficient to support
his conviction for burglary of a habitation with intent to commit aggravated assault. (1) Specifically,
appellant argues that the evidence is insufficient to establish that he intended to commit an
aggravated assault because the evidence did not show that he intended: (1) to cause serious bodily
injury to another person; or (2) to use or exhibit a deadly weapon during the commission of an
assault. See Tex. Penal Code Ann. § 22.02(a) (West 2007). 

 Appellant concedes that the evidence establishes that he intended to use the metal rod
to gain entry to Kight's house, but he argues that the evidence is insufficient to prove that he
intended to cause serious bodily injury to Davis or Kight's children. A person acts intentionally, or
with intent, with respect to the nature of his conduct or to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result. Id. § 6.03(a) (West 2007). 
Intent may be inferred from circumstantial evidence such as the person's acts, words, and conduct. 
See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). We should look at events
occurring before, during, and after the commission of the offense and may rely on actions of the
defendant that show an understanding and common design to do the prohibited act. Id. at 49. 

 A review of the record shows that appellant used the metal rod to break several
windows around and within the front door of Kight's home and that he "stabbed," "jabbed," and
"poked" the metal rod at Davis, hitting her at least once with enough force to cause bruising. While
he was breaking the windows, he also yelled "Die, Bitch," to Davis, called her other names, cussed
at her, and spit in her face. Davis testified that she had no doubt in her mind that he would have
killed her if he had gotten inside the house and that she thought he would also kill S.K. and D.K. and
then take R.M. Specifically, Davis testified that as she held the bar down, she thought, "If he gets
in, my grandkids are dead." S.K. testified that she thought appellant was trying to seriously hurt or
kill Davis with the metal rod and that if appellant had gotten into the house, he would likely have
killed Davis, S.K. and D.K. and then taken R.M., or killed Davis and taken R.M., leaving S.K. and
D.K. alone. One of the officers who reported to the scene testified that based on the evidence he
gathered at the scene, he thought that appellant likely would have beaten Davis with the metal rod,
potentially causing serious bodily injury or death, if he had gained entry to the house. Davis and
S.K. testified that even after appellant was captured by police, he lunged at Davis, kicking her. Other
witnesses saw appellant lunge at Davis but did not see his leg make contact with her. Appellant did
not testify or present any evidence at trial. 

 Considering the evidence in the light most favorable to the verdict and in a neutral
light--including appellant's violent conduct both during and after the offense and his use of
threatening and derogatory language--we conclude that the evidence is sufficient to support a
finding that appellant intended to cause Davis serious bodily injury at the time of the burglary. See
Ortiz v. State, 993 S.W.2d 892, 894 (Tex. App.--Fort Worth 1999, no pet.) (attacker's assertive
conduct with weapon may be evidence of intent to use weapon to inflict serious bodily injury or
death); Joseph v. State, 679 S.W.2d 728, 730 (Tex. App.--Houston [1st Dist.] 1984, no writ)
(intent may be inferred from events occurring while burglary in progress).

 Because we determine that the evidence is legally and factually sufficient to establish
that appellant intended to cause serious bodily injury to Davis, we need not decide whether the
evidence is sufficient to establish that he intended to use or exhibit a deadly weapon during the
commission of the assault. See Tex. Penal Code Ann. § 22.02(a) (requiring proof of only one of two
conditions to establish aggravated assault). 


CONCLUSION 

 Because we conclude that the evidence is legally and factually sufficient to support
appellant's conviction, we affirm the trial court's judgment. 



 ___________________________________________ David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed: December 31, 2008

Do Not Publish
1. When the state charges a defendant with burglary of a habitation with intent to commit
aggravated assault, the state is not required to prove that an aggravated assault actually occurred. 
See Jacob v. State, 892 S.W.2d 905, 908-09 (Tex. Crim. App. 1995). Rather, the state must show
only that the defendant intended to commit aggravated assault at the time that he entered the
habitation. See id. at 909; Conrad v. State, 230 S.W.2d 225, 226 (Tex. Crim. App. 1950).