

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-05-422-CR

RODGER LOU GRISSAM                                      APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION ON REMAND[1]

------------

Appellant Rodger Lou Grissam challenges the legal and factual sufficiency of the evidence to support his conviction and twelve-year sentence for burglary. In our original opinion and judgment, we reversed the trial court's judgment, rendered a judgment of conviction on the lesser included offense of criminal

---

[1] *See* Tex. R. App. P. 47.4.

trespass, and remanded the case for a new trial on punishment. *Grissam v. State* ("*Grissam I*"), No. 02-05-00422-CR, 2007 WL 2405122, at *4–5 (Tex. App.—Fort Worth Aug. 24, 2007) (mem. op., not designated for publication), *rev'd*, *Grissam v. State* ("*Grissam II*"), 267 S.W.3d 39, 40 (Tex. Crim. App. 2008). Appellant's indictment charged burglary under two theories, (1) breaking and entering with intent to commit theft and (2) breaking and entering and committing or attempting to commit theft. *Id.* at *1. The abstract paragraph of the jury charge contained only an instruction on "intent to commit theft," but the application paragraph contained only an instruction on "committed or attempted to commit theft." *Id.* at *2–3. Holding that there was no evidence that Appellant "committed or attempted to commit theft"—the only offense submitted by the application paragraph—we reversed the trial court's judgment and rendered judgment on the lesser included offense of criminal trespass. *Id.* at *4, 5.

The court of criminal appeals reversed our judgment, instructing us that because the charge contained both theories of burglary, even though only one was in the application paragraph, we should have measured the legal sufficiency of the evidence against the requirements for conviction under either theory. *Grissam II*, 267 S.W.3d at 40. Following the court of criminal appeals'

2

directive to weigh the sufficiency of the evidence against both theories of burglary, we now affirm the trial court's judgment.

**Standards of Review**

When reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

3

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the

4

factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

**Burglary**

The indictment charged Appellant with burglary of a habitation when he "did . . . intentionally or knowingly, without the effective consent of Ashley Carey, the owner thereof, enter a habitation with intent to commit theft . . . and did attempt to commit or commit theft." *See* Tex. Penal Code Ann. § 30.02(a)(1) (Vernon Supp. 2008). The jury found him guilty "as alledged in the indictment."

5

**Evidence**

Ashley Carey Greer was the State's main witness at trial. She testified that she was alone in the home she shared with her parents one day when she heard someone knocking at the back door. Greer looked through the door's peephole and saw two men whom she did not recognize standing at the door and a car parked in the residence's carport where it could not be seen from the road. Greer testified that she did not speak or otherwise alert the men to her presence because she did not know them. She said that as she watched though the peephole, the men knocked on the door a few more times and then wiped their fingerprints from the metal screen door. The men then jiggled the door knob and opened the door, which was not locked. Greer testified that she crouched behind the door as it opened. Both men entered the house. One man, who was carrying a flashlight, walked into another room of the house, while the other man, whom Greer identified as Appellant, stood at the door. Greer testified that the other man told Appellant to tell someone who was waiting in the car to honk if they saw anyone coming and that the men would leave through the front door, and Appellant shouted these instructions to whoever was waiting in the car.

Greer said Appellant eventually closed the door; when he did so, she stood up to confront him. Appellant was startled and said he was looking for

6

his friend "John."  The other man came back into the room and said that he was looking for his mother.  The men then left through the same door, got into the car, and drove away.  Greer testified that she saw two women in the car with the men.  She wrote down the car's license plate number, locked herself in the bathroom, and telephoned her father.

Greer's father, Rick Carey, testified that Greer called him and said someone had tried to break into their home.  Carey immediately called 911.

Hood County Deputy Sheriff Clint Pullin testified that he responded to Carey's 911 call.  Greer gave him the car's license plate number, and a sheriff's dispatcher looked up the corresponding address record.  Deputy Pullin went to that address and found the car.

Hood County Sheriff's Investigator Larry Goin testified that he was dispatched to the car's location, where another law enforcement officer had already taken Appellant, another man, and two women into custody.  Investigator Goin arrested Appellant, took him to the Hood County Law Enforcement Center, and interviewed him.  Appellant gave a written statement in which Appellant said that he, his friend, Joey LeFebvre, his wife, and LeFebvre's girlfriend went to a house looking for "John" and LeFebvre's mother; LeFebvre knocked on the door and then went inside as he called, "Mom, mom"; a lady stood up from behind the door and said, "No John lives

7

here"; and Appellant called to LeFebvre, who remarked as they left, "We must have the wrong house." On cross-examination, Investigator Goin testified that LeFebvre had already been convicted for burglary in connection with the same incident.

### Discussion

Appellant argues that the evidence is legally and factually insufficient to prove that Appellant entered Greer's residence with the specific intent to commit theft. We disagree.

It is well settled in this state that the question of the intent with which a person unlawfully enters a habitation is a fact question for the jury to be drawn from the surrounding circumstances. *Moreno v. State,* 702 S.W.2d 636, 641 (Tex. Crim. App. 1986); *Stearn v. State,* 571 S.W.2d 177, 177 (Tex. Crim. App. [Panel Op.] 1978) (holding evidence of intent to commit theft sufficient when defendant was found in residence's kitchen and immediately fled, even though nothing in house had been disturbed). The jury is exclusively empowered to determine the issue of intent, and the events of a burglary may imply the intent with which the burglar entered. *Moreno*, 702 S.W.2d at 641; *Joseph v. State*, 679 S.W.2d 728, 730 (Tex. App.—Houston [1st Dist.] 1984, no pet.). Furthermore, property need not be taken for proof of intent to commit

8

theft to be sufficient. *Ortega v. State*, 626 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1981).

In this case, the evidence shows Appellant and LeFebvre entered Greer's house through the back door without her permission. They wiped their fingerprints from the outer, metal screen door. Though it was midday, LeFebvre was carrying a flashlight. Appellant instructed the women in the car to honk if anyone drove up and said that he and LeFebvre would leave the residence through the front door. The car was parked in the carport where it was concealed from traffic on the public roadway. When Greer confronted the men, they gave conflicting reasons for being in the house; Appellant said they were looking for "John," and LeFebvre said they were looking for LeFebvre's mother. Both stated reasons were inconsistent with the men's actions.

Considering the evidence in the light most favorable to the verdict, we hold a that a rational trier of fact could find the essential elements of burglary, including intent to commit theft as alleged in the indictment's first theory, beyond a reasonable doubt. Therefore, the evidence is legally sufficient. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Considering the evidence in a neutral light, we also hold that the jury was rationally justified in finding guilt beyond a reasonable doubt; thus, the evidence was factually sufficient. *See Watson*, 204 S.W.3d at 414. We overrule both of Appellant's points.

9

**Conclusion**

Having overruled both of Appellant's points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  March 12, 2009

10



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-05-422-CR

RODGER LOU GRISSAM                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

### DISSENTING OPINION ON REMAND

------------

Because the majority holds that there is no error in the case before us, I must respectfully dissent, with all appropriate consideration to the instructions of the Texas Court of Criminal Appeals. On remand, the majority holds, in response to instructions from the Texas Court of Criminal Appeals in *Grissam II*,[1] that we ignore the application paragraph in determining the sufficiency of

---

[1] *Grissam v. State*, 267 S.W.3d 39, 41 (Tex. Crim. App. 2008).

the evidence and consider only the original indictment and hypothetically correct jury charge.[2]  I believe we are establishing dangerous precedent in limiting the State's ability to determine its own trial strategy.  The State must not be deprived of its essential authority to determine the allegations it presents to the jury.

In the case now before this court, the State abandoned an alternative means of committing the offense of burglary.  The majority, in response to the analysis in *Grissam II*, essentially holds that the State is not permitted to abandon an allegation contained in the indictment by not asking that it be submitted to the jury or by asking that it not be submitted to the jury.  The charge conference was not recorded, but the State did not voice any objection to the abandonment of the burglary with intent to commit theft allegation.  On original appeal, the State did not argue that it did not intend to abandon that allegation.  Rather, the State argued that it had proved the allegation in the indictment that Appellant committed burglary and did attempt to commit or commit theft.

While it is true, as the Texas Court of Criminal Appeals recognizes, that generally "[t]he legal sufficiency of evidence is measured against the

---

[2] Majority op. at 2, 3.

2

requirements for conviction in a correct charge of the court (as distinguished from the charge that actually was given),"[3] *Malik* addressed the problems of a jury charge that unfairly increased the State's burden.[4] It did not address the case in which the State's trial strategy was to abandon an allegation in the indictment and the trial strategy did not work to the State's advantage.[5]

The Texas Court of Criminal Appeals has addressed the State's trial strategy in not requesting a lesser included jury instruction, and a divided court has held that the State's decision regarding trial strategy must be honored.[6] Judge Hervey wrote,

> The issue in this case is whether an appellate court may reform a trial court's judgment to reflect a conviction for an unrequested lesser-included offense not submitted to the jury, when the appellate court decides that the evidence is insufficient to support the jury's guilty verdict for the greater offense but is sufficient to support a conviction for the lesser-included offense. We decide that, under these circumstances, an appellate court may not reform the trial court's judgment to reflect a conviction for the lesser-included offense.[7]

---

[3] *Grissam II*, 267 S.W.3d at 40 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

[4] *Malik*, 953 S.W.2d at 235, 240.

[5] *See id.* at 234–40.

[6] *Haynes v. State*, 273 S.W.3d 183, 184 (Tex. Crim. App. 2008).

[7] *Id.*

3

Fortunately for the prosecution in *Brosky v. State*, appellate courts respected its trial strategy and did not try to revive a theory not presented to the jury.[8]  In his original trial, the jury sentenced Brosky to ten years' incarceration and recommended probation in a murder case.  The State then indicted Brosky for organized criminal activity in the murder of the same person.  Brosky brought a writ of habeas corpus arguing double jeopardy, and relief was denied.  In the opinion on appeal from the second trial, this court noted, "[I]n the murder prosecution, the jury was not instructed on the conspiratorial theory of parties, nor did the prosecutor argue that Brosky acted as part of a conspiracy."[9]  Both convictions stood, and the second jury sentenced Brosky to forty years' confinement.  Fortunately for the State, the prosecution was allowed to determine its own trial strategy, and the appellate courts did not step in to "fix" the prosecution's "mistake."

In the case now before this court, the State did not request a jury instruction on the abandoned allegation.  The State did not object to the jury charge that did not include the abandoned count.  The State did not complain on appeal to this court that the abandoned count should have been submitted

---

[8] *Brosky v. State*, 915 S.W.2d 120, 140 (Tex. App.—Fort Worth, pet. ref'd), *cert. denied*, 519 U.S. 1020 (1996).

[9] *Id.* (citing *Ex parte Brosky,* 863 S.W.2d 783, 785 (Tex. App.—Fort Worth 1993, no pet.)).

4

to the jury.  At some point appellate courts must accord lawyers the respect that is their due and allow them to pursue the trial strategy they deem best.

The Texas Court of Criminal Appeals has now instructed this court to re-evaluate the sufficiency of the evidence under *Malik* by measuring the evidence not against what the jury was asked to weigh, but against the hypothetically correct charge as measured by the hypothetically correct indictment.[10]  In this case, what is the hypothetically correct indictment?  Is it the indictment before the State abandoned the first paragraph charging burglary with intent to commit theft, or the indictment as it stood after the State abandoned the first paragraph?  Or have we been instructed that the State may no longer abandon an allegation without formally amending the indictment?  If an appellate court may not modify a judgment to show conviction for a lesser included offense not requested or submitted to the jury,[11] may it nevertheless modify a judgment to show conviction for an abandoned allegation not submitted to the jury?

---

[10] *See Grissam II*, 267 S.W.3d at 40 (quoting *Malik*, 953 S.W.2d at 240); *Fuller v. State*, 73 S.W.3d 250, 260 (Tex. Crim. App. 2002) (Womack, J., concurring) ("The court of appeals found it unclear whether *Malik* would use a hypothetically correct jury charge that was based on a hypothetically correct indictment or one that was based on the actual indictment."); *Rosales v. State*, 4 S.W.3d 228, 235 n.3 (Tex. Crim. App. 1999) (Meyers, J., concurring) ("By extending *Malik* to the context presented in this case, the majority appears to have created a 'hypothetically correct indictment' doctrine."), *cert. denied*, 531 U.S. 1016 (2000).

[11] *Haynes*, 273 S.W.3d at 184.

The instruction upon which the Texas Court of Criminal Appeals has instructed this court to rely, and upon which the majority does rely, is an impermissibly expansive definition of burglary that was not properly before the jury.[12] The State not only did not object to the jury charge; the State, when asked if it had any objections or requested charges, responded, "No. Your Honor." When a defendant states that he has "no objection" or does not object to the jury charge, charge error is reversible only if it results in egregious harm.[13] What is the effect when the State affirmatively declares that it has no objection to a jury charge that reflects abandonment of a paragraph of the indictment?

The *Malik* court recognized the constitutional implications inherent in a sufficiency review in a footnote,

> We recognize that due process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury. Perhaps recognizing this principle, the Fifth Circuit implied that the complete absence of a party's

[12] *See Plunkett v. Estelle,* 709 F.2d 1004, 1009 (5th Cir. 1983), *cert. denied*, *McKaskle v. Plunkett*, 465 U.S. 1007 (1984); *see, e.g., Cook v. State,* 884 S.W.2d 485, 491 (Tex. Crim. App. 1994) ("It is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense.").

[13] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

instruction from the jury charge may present constitutional problems. However, we do not believe that due process is necessarily violated by affirming a conviction in which the jury charge contains extra, unnecessary elements that are not supported by the evidence. Moreover, the Supreme Court has indicated that the *McCormick/Dunn/Cole* rule does not bar retrial of a criminal defendant.[14]

So where do *Apprendi*,[15] *Ring*,[16] and *Blakely*[17] fit in? The Texas Court of Criminal Appeals explained,

> The Supreme Court determined in *Apprendi v. New Jersey* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." As Justice Scalia later explained for the Supreme Court in *Blakely v. Washington*, the statutory maximum in this context means the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Thus, the *Apprendi* line of cases requires that, in any case in which the defendant has elected to exercise his Sixth Amendment right to a jury trial, any discrete finding of fact that has the effect of increasing the maximum punishment that can be assessed must be made by the jury, even if that fact-finding occurs as part of the punishment determination.
>
> The appellant relies on this determination by *Apprendi* and its progeny that a sentence cannot be greater than that authorized by the jury's fact-finding. But these cases hold that a trial court is prohibited from unilaterally increasing individual sentences on the

---

[14] *Malik*, 953 S.W.2d at 238 n.3 (citations omitted).

[15] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).

[16] *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002).

[17] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).

basis of facts that were not resolved by the jury. Thus, *Apprendi* and its progeny clearly deal with the upper-end extension of individual sentences, when that extension is contingent upon findings of fact that were never submitted to the jury.[18]

In the case now before this court, the common element of the first and second paragraphs of the indictment was entry into a habitation without the effective consent of the owner. That is, the common element was criminal trespass.[19] Only the second paragraph was submitted to the jury, and the jury did return a verdict on the issue of criminal trespass, a misdemeanor.[20] What makes criminal trespass a burglary and, therefore, a felony, is the theft element. There was no evidence that Appellant committed theft or attempted to commit theft. Yet this was the issue submitted to the jury that converted the misdemeanor criminal trespass into a felony. The jury was never asked to consider evidence that Appellant entered the house with intent to commit theft. That is, the question of intent to commit theft—the "discrete finding of fact that has the effect of increasing the maximum punishment that can be

---

[18] *Barrow v. State*, 207 S.W.3d 377, 379 (Tex. Crim. App. 2006) (citations omitted).

[19] *See* Tex. Penal Code Ann. § 30.05(a) (Vernon Supp. 2008).

[20] *See id.* § 30.05(d).

assessed"[21]— was never submitted to the jury even though the *Apprendi* line of cases makes it clear that such a determination "must be made by the jury."[22]

There is ample evidence that Appellant committed criminal trespass. But what is the evidence of any intent to commit theft? Is it a default position? Is it a presumption? Is any entry into a habitation without the effective consent of the owner a burglary with intent to commit theft unless the defendant disproves this presumption? It was daytime, not nighttime. There was no evidence of any plan to commit theft or any attempt to commit theft. We can only speculate, and the jury could only speculate, regarding Appellant's intent in entering the house.

As we stated in our original opinion, reiterating well-established law,

> The application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury. In the absence of an application paragraph incorporating a theory recited in the abstract portion, a jury is not authorized to convict on that theory.[23]

---

[21] *Barrow*, 207 S.W.3d at 379.

[22] *Id.*

[23] *Grissam v. State (Grissam I)*, No. 02-05-00422-CR, 2007 WL 2405122, at *3 (Tex. App.—Fort Worth Aug. 24, 2007) (citations omitted), *rev'd*, 267 S.W.3d at 41.

Similarly, the Texas Court of Criminal Appeals has repeatedly held, "The application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury."[24]

The issue in *Malik* was a

> jury instruction concerning the legality of appellant's detention [that] should not have been used to measure the sufficiency of the evidence. The legality of appellant's detention is not an element of the offense charged but merely relates to the admissibility of evidence. Moreover, a hypothetically correct jury charge would not have made the admissibility of a particular piece of evidence a precondition for conviction.[25]

Did the *Malik* court intend to abrogate the requirement of an application paragraph that submitted to the jury all the elements of the offense of which the jury convicts?[26] Does Texas law no longer require an application paragraph?[27] Is the State's abandonment of a paragraph or count of the

---

[24] *McFarland v. State*, 928 S.W.2d 482, 515 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997).

[25] *Malik*, 953 S.W.2d at 240.

[26] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (providing jury is exclusive judge of facts).

[27] *See id.* arts. 36.13 (providing jury is exclusive judge of facts); 36.14 (providing that judge shall deliver to jury a "written charge distinctly setting forth the law *applicable* to the case") (emphasis added); 36.19 (providing for our review of charge error) (Vernon 2006).

10

indictment no longer permitted?  In the case now before this court, the jury did not find the elements of the offense of burglary with intent to commit theft. Is this now charge error, and should we apply an *Almanza* analysis?[28]

I believe that *Malik* has been expanded far beyond what is constitutionally permissible.  When a defendant or the State in a criminal case demands to have a jury try the case, the jury returns a verdict only as to the offenses submitted to it in the application paragraph, according to the applicable provisions of the Texas Code of Criminal Procedure.  In her dissent to the majority opinion in *Dougherty v. State*,[29] Judge Keller explains the necessary interplay between the definitional portion of a jury charge in a criminal case and the application paragraph:

> In *Patrick* — a case with a similar jury charge error — this Court limited its harm analysis in just the way that the Court of Appeals did in this case.  We looked no further than the application paragraph to determine that the charge error in that case was harmless.  In *Medina* we did look at other factors, but along the way we cited to *Plata v. State*.  In *Plata*, we considered the reverse problem:  a correct abstract instruction in a jury charge that lacked a proper application paragraph.  In concluding that the error was not cured by the abstract instruction, this Court said:
>
>> [A]bstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of

---

[28] *Almanza*, 686 S.W.2d at 171–72.

[29] *Dougherty v. State*, 188 S.W.3d 670 (Tex. Crim. App. 2006) (Keller, J., dissenting).

11

concepts and terms used in the application paragraphs of the charge . . . . The inclusion of a merely superfluous abstraction, therefore, never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs.[30]

Definitions limit the jury's consideration to the facts of the case, but they impose no temporal or geographic limitations and restrict consideration to no named persons. That is why the application paragraph is required. The jury must find all the elements of the offense, including culpable mental state, geographic location, guilty acts, and persons named.[31] The definitions do not incorporate the required elements set out in the indictment.

I believe that minimal constitutional due process protections require that in a jury trial, the jury must find not the abstract elements of the offense, but the acts alleged in indictment. When the State abandons an allegation, it is no longer available to be reclaimed under *Malik*. If the State's abandonment of the wrong allegation does not render the proof insufficient, which I believe it does

---

[30] *Id.* at 671 (citations omitted).

[31] *Swearingen v. State*, 101 S.W.3d 89, 103 (Tex. Crim. App. 2003) (Johnson, J., dissenting) ("[T]he reviewing court must remain cognizant that the state always carries the burden of proof to establish each and every element of a criminal offense at trial.").

in this case, it must at least constitute charge error under these facts because the offense described in the definition section of the jury charge was not the offense submitted in the application paragraph.  For these reasons, I must respectfully dissent from the majority's opinion.


LEE ANN DAUPHINOT
JUSTICE


PUBLISH

DELIVERED:    March 12, 2009

13